# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| HUGO MADRID, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TELENETWORK PARTNERS, LTD., et al.,<br><br>    Defendants. | Case No. 5:17-cv-04519-BLF<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE SETTLEMENT, NAMED PLAINTIFF SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS; DISMISSING RULE 23 CLASS CLAIMS**<br><br>[Re: ECF 69] |

Before the Court is Plaintiffs' Unopposed Motion for Approval of FLSA Collective Settlement, Named Plaintiff Service Payments, and Attorneys' Fees and Cost. Mot., ECF 69. In this putative class and collective action, Plaintiffs Hugo Madrid, Leigha Salyers, and Jenifer Marchon (collectively, "Named Plaintiffs") allege that Defendants teleNetwork Partners, LTD., d/b/a teleNetwork, and teleNetwork California, Inc. (collectively, "Defendants" or "teleNetwork") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and various California labor laws. *See* Compl. ¶ 1, ECF 1. Pending before the Court is Plaintiffs' motion seeking settlement approval. Mot. at 1–2. The settlement resolves the claims of the Named Plaintiffs and the 65 individuals who opted in to the FLSA collective action (collectively, "Opt-In Plaintiffs") (together with Named Plaintiffs, "Plaintiffs"). In their motion, Plaintiffs request that the Court approve the payments to the Opt-In Plaintiffs, the service awards to the Named Plaintiffs, and the attorney's fees and litigation costs, as well as dismiss without prejudice the claims of the putative Rule 23 class members who did not opt in to the FLSA claims. *See id.* at 2.

Having considered the papers filed by the parties, the relevant legal authority, and the oral arguments at the June 20, 2019 hearing, the Court GRANTS Plaintiffs' motion for settlement approval.

## I. BACKGROUND

### A. Factual and Procedural Background

On August 8, 2017, Named Plaintiffs filed this putative collective and class action case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and various California labor laws. Compl. ¶ 1. TeleNetwork provides call-center services from their physical call centers in Texas and California. *Id.* ¶¶ 2, 27. TeleNetwork employed Named Plaintiffs as customer service representatives ("CSRs") in these call centers. *Id.* ¶¶ 2–3, 24–26. Named Plaintiffs allege that Defendants did not accurately compensate them for all the work they performed from the beginning of their work shifts through the end of their shifts. *Id.* ¶¶ 5–9. Specifically, Named Plaintiffs allege that they did not receive compensation for the time it took for them to execute required tasks at the beginning of their shifts, such as turning on the computer, logging into the appropriate software, and entering in their time. *Id.* ¶¶ 7–9, 29–33. In addition, Named Plaintiffs allege that Defendants failed to provide them with a bona fide meal period because Defendants required Named Plaintiffs to return to their stations and log back into their computers before the end of their meal breaks. *Id.* ¶¶ 34–38. Finally, Named Plaintiffs allege that they were not compensated for post-shift work because Defendants did not compensate them for the time spent logging out of the systems and shutting down their workstations. *Id.* ¶¶ 39–42.

Based on these alleged actions, Named Plaintiffs assert the following causes of action against Defendants: (1) a violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for failure to pay overtime wages, *id.* ¶¶ 77–87; (2) a violation of California Labor Code §§ 223, 510, 1194, 1197.1, 1198, and IWC Wage Order 4, for failure to pay overtime, *id.* ¶¶ 88–96; (3) a violation of California Labor Code §§ 223, 1194, 1197, 1197.1, and IWC Wage Order 4, for failure to pay minimum wage and regular wages for all hours worked, *id.* ¶¶ 97–103; (4) a violation of California Labor Code §§ 221 and 223, for unlawful deductions of wages, *id.* ¶¶ 104–10; (5) a violation of California Labor Code §§ 226.7, 512, and IWC Wage Order 4, for failure to provide meal breaks, *id.* ¶¶ 111–19; (6) a violation of California Labor Code § 226, for the failure to provide accurate wage statements, *id.* ¶¶ 120–24; (7) a violation of California Labor Code §§ 201, 202, and 203, for the failure to timely pay wages upon discharge, *id.* ¶¶ 125–29; (8) a violation of

2

1   California Business and Professions Code § 17200, *et seq.*, *id.* ¶¶ 130–37; and (9) violations under
2   the Private Attorneys General Act ("PAGA"), California Labor Code § 2698, *et seq.*, *id.* ¶¶ 138–
3   44.
4         Named Plaintiffs bring these claims on behalf a putative collective for the alleged FLSA
5   violation and a putative class for the alleged California labor law violations. The collective is
6   defined as "[a]ll similarly situated current and former hourly brick-and-mortar Customer Service
7   Representatives who work or have worked for Defendants at any time from August 8, 2014
8   through judgment." *Id.* ¶ 54. The class is defined as "[a]ll similarly situated current and former
9   hourly brick-and-mortar Customer Service Representatives who work or have worked for
10  Defendants in California at any time from August 8, 2013 through judgment." *Id.* ¶ 68.
11        On September 20, 2017, the Court granted the Parties' stipulation to conditionally certify
12  the FLSA collective action and to provide notice to the putative collective members. ECF 23. On
13  September 22, 2017, Defendants answered the Complaint. ECF 24. By the end of the 45-day opt-
14  in period, the 65 Opt-In Plaintiffs had filed consents to join the litigation. ECF 30–45. After the
15  close of the opt-in period, the Parties began settlement discussions. Mot., Ex. B ("Stoops Decl.")
16  ¶ 22, ECF 69-2. The Parties' settlement discussions took place over approximately 12 months,
17  and they reached a settlement in December 2018. *Id.*

### B. Settlement Agreement

19  In the Parties' Settlement Agreement, Defendants agreed to a gross settlement amount of
20  $65,000. Mot., Ex. A ("Settlement Agreement") § 2.B.1, ECF 69-1. The gross settlement
21  reserves $31,894.63 for attorney's fees and costs. *Id.* § 2.B.2. In addition, Named Plaintiffs will
22  receive $2,000 each from the gross settlement amount as service awards. *Id.* § 2.B.3. The
23  remainder ($27,105.37) will be distributed as individual payments to each participating Opt-In
24  Plaintiff. *Id.* § 2.B.4. The gross settlement does not allocate any money to the PAGA claim. *Id.* §
25  2.B.5. The terms of the settlement also state that Defendants will donate any uncashed settlement
26  checks or other residual funds to the California Unclaimed Wage Fund. *Id.* § 2.B.6. Finally, the
27  gross settlement does not include Defendants' share of payroll taxes, so Defendants will need to
28  pay those taxes in addition to the settlement amount. *Id.* § 2.B.1.

In terms of the allocation formula for individual payments, the payments will be determined by considering the number of hours and weeks that each Opt-In Plaintiff worked, as well as each employee's hourly rate. Mot., Ex. D ("Settlement Notice") at 2, ECF 69-4. Any work week in which an Opt-In Plaintiff worked fewer than 39 hours will not be counted. *Id.* However, additional hours and weeks that an Opt-In Plaintiff worked will increase his or her individual payment. *See id.* Each Opt-In Plaintiff will receive a minimum individual payout of $80. *Id.* The Settlement Agreement also allocates 50% of each individual payment to wages, which will be subject to all required payroll taxes and deductions. Mot. at 10; Settlement Agreement § 2.B.4.

Under the terms of the Settlement Agreement, Plaintiffs agreed to release "any and all wage and hour claims" under both state and federal law "that were made or could have been made" against Defendants in this action. *Id.* § 3.A. Plaintiffs also consented to release their PAGA claims and their rights to any other fees or costs related to this litigation. *Id*. § 3.A–C. Finally, Plaintiffs agreed to seek Court approval to dismiss without prejudice the putative class claims. *Id.* § 2.A.

Defendants will mail settlement notices enclosing the settlement checks to Plaintiffs no later than 90 days after the Court approves the settlement. *Id*. § 2.B.4. The Settlement Notice will inform each Opt-In Plaintiff of the claims made, the terms of the Settlement Agreement, their share of the Settlement Payment, and the claims that they are releasing. *See* Settlement Notice. Defendants will also notify Plaintiffs' Counsel if any checks are undeliverable, and Plaintiffs' Counsel will attempt to locate these Opt-In Plaintiffs. Settlement Agreement § 2.B.6. Per the agreement, Opt-In Plaintiffs will have 180 calendar days after the initial issuance of their settlement check to sign and cash the settlement check. *Id.* Finally, Plaintiffs' Counsel stated that they notified the Opt-In Plaintiffs of the terms of the Settlement Agreement before filing the motion. *See* Stoops Decl. ¶ 39. At oral argument, Plaintiffs' Counsel stated to the Court that they notified the Opt-In Plaintiffs of the terms of the Settlement Agreement on firm letterhead and gave the Opt-In Plaintiffs until the date of this Order to opt-out. No Opt-In Plaintiffs objected or opted out.

4

## II. LEGAL STANDARD

"The [FLSA] seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general wellbeing of workers.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting 29 U.S.C. § 202(a)). Employees cannot waive their rights under the FLSA since doing so would "nullify the purposes" of the statute. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Accordingly, either the Secretary of Labor or a district court must approve the settlement of an FLSA claim. *See Gonzalez v. Fallanghina, LLC*, No. 16-CV-1832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017); *Slezak v. City of Palo Alto*, No. 16-CV-3224-LHK, 2017 WL 2688224, at *1 (N.D. Cal. June 22, 2017).

The Ninth Circuit has not specifically addressed the criteria courts should use to determine whether to approve an FLSA settlement. However, district courts in the Ninth Circuit have followed the standard set forth in the Eleventh Circuit's *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g.*, *Gonzalez*, 2017 WL 1374582 at *2; *Slezak*, 2017 WL 2688224, at *2. Under *Lynn Food Stores*, before approving an FLSA settlement, the court must scrutinize the settlement agreement to determine if it is "a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355. If the settlement reflects a reasonable compromise over issues that are in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## III. DISCUSSION

In their motion, Plaintiffs request that the Court issue an order (1) approving the $65,000 FLSA claim settlement and allocation formula according to the terms of the Settlement Agreement; (2) approving attorney's fees and litigation costs in the amount of $31,894.63; (3) distributing $2,000 in service awards to each of the Named Plaintiffs for a total of $6,000; and (4) dismissing without prejudice the claims of the Rule 23 California class members who did not opt-in. Mot. at 1. The Court addresses each request in turn.

### A. Approval of the FLSA Settlement

Before approving the FLSA settlement here, the Court must find that (1) the case involves

5

a bona fide dispute; (2) the proposed settlement agreement is fair and reasonable; and (3) the award of costs is reasonable. *Lynn's Food Stores*, 679 F.2d at 1354. The Court addresses each issue in turn.

### 1. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez*, 2017 WL 1374582, at *2). That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims. *See Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008)). If there were no doubt as to the employer's liability, the FLSA settlement would allow an employer to avoid paying out the full cost of complying with the FLSA. *See id.* at 1173.

Here, the Court finds that there is a bona fide dispute. The Parties have rigorously debated whether Plaintiffs actually performed any off-the-clock work, how much of such work they performed, whether they can prove they performed such work, and whether the *de minimis* doctrine would exclude Plaintiffs' off-the-clock work from qualifying for recovery under the law. Stoops Decl. ¶ 20. In addition, during the litigation and negotiations, Defendants defended their position by arguing, among other things, that (1) they maintained written employment policies prohibiting CSRs from working before their shifts; (2) they could provide supervisor and manager testimony that CSRs cannot log in until their shifts begin; and (3) Plaintiffs cannot demonstrate that Defendants' alleged violations were willful. *Id.*

Because the Parties disputed these aspects of the case, the Court finds a bona fide dispute under the FLSA. Most importantly, the Court acknowledges that the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*, No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

6

### 2. Fair and Reasonable Resolution

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances" and the "purposes of [the] FLSA." *Selk*, 159 F. Supp. 3d at 1173. In making this determination, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See, e.g.*, *id.*; *Jennings*, 2018 WL 4773057, at *4.

The Court will now address each of these factors accordingly.

### a. Plaintiffs' Range of Possible Recovery

Regarding the Plaintiffs' range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See, e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F. Supp. 3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Plaintiffs estimated that they would have been entitled to total damages between $181,473 to $200,343 for their various claims. Stoops Decl. ¶ 23. Thus, the $65,000 settlement represents 32.4% to 35.8% of the total possible recovery. *Id.* ¶ 24. This percentage of recovery includes all applicable California penalties, and it considers Plaintiffs' claims for the total number of work weeks, the actual hourly rates paid, and any potential liquidated damages. *Id.* Furthermore, Plaintiffs' expert estimated that Plaintiffs could only recover actual wage damages in the range of $37,144 to $56,014. *Id.* The $65,000 settlement exceeds that range. Given these facts, and considering Plaintiffs' admission that they "[r]ecogniz[e] the uncertain legal and factual issues involved," the Court finds that the settlement amount is reasonable. Mot. at 14; *see also* Stoops Decl. ¶¶ 13–26. Thus, this factor weighs in favor of approving the FLSA settlement.

### b. The Stage of the Proceedings and Amount of Discovery Completed

The Court next assesses "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jennings*, 2018 WL 4773057, at *5 (quoting *Slezak*, 2017 WL 2688224, at *4). If the parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Here, the settlement is "the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiations between counsel." Mot. at 14; *see also* Stoops Decl. ¶¶ 13–26. Moreover, the Parties spent 12 months negotiating this settlement. Stoops Decl. ¶ 22. Given the current stage of the case, the Parties appear to have a good understanding of the merits of their respective positions. Accordingly, this factor weighs in favor of approving the FLSA settlement.

### c. The Seriousness of the Litigation Risks Faced by the Parties

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at *5. Several facts in this case potentially jeopardize Plaintiffs' recovery should this case proceed to trial, including Defendants' written employment policies and testimony from supervisors contradicting Plaintiffs' claims, the different ways in which Plaintiffs completed their log-in and log-out processes, and Plaintiffs' potential inability to prove that Defendants' alleged violations were willful. *See* Stoops Decl. ¶ 20. Accordingly, further litigation might result in Plaintiffs recovering less than the Settlement Amount or perhaps nothing at all, so this factor weighs in favor of approving the FLSA settlement.

### d. The Scope of Any Release Provision in the Settlement Agreement

Courts in this district have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever. *See, e.g., McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-CV-5243-SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it would be fair and reasonable for a court to enforce a general

8

release provision of all claims related to their employment in an FLSA settlement); *Garcia v. Jambox, Inc.*, No. 14-CV-3504-MHD, 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015) (disapproving of release of all claims known and unknown against defendants, including those that seemingly had "no relationship whatsoever" to wage and hour issues); *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11-CV-1319-MDD, 2014 WL 1671489, at *2–*3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F. Supp. 3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

Here, the release provision, consistent with Ninth Circuit precedent, is limited to releasing wage and hour claims that Plaintiffs could have asserted in the instant action. *See* Settlement Agreement § 3. As such, the release is not a blanket release of all potential claims, but is instead tailored to the wage and hour action here. Accordingly, this factor weighs in favor of approval of the FLSA settlement.

### e. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak*, 2017 WL 2688224, at *5 (citation omitted). Here, Plaintiffs' Counsel asserts that "the settlement is fair and reasonable," and provides factual support for that assertion. *See* Stoops Decl. ¶¶ 18–35, 40. Plaintiffs' Counsel has been practicing law for over a decade and has represented numerous plaintiffs in employment and wage-related matters. *Id.* ¶¶ 7–8. Moreover, Plaintiffs' Counsel has "notified the Collective Members of the material terms of the settlement," including the gross settlement amount, service payments, and attorney's fees and costs. Mot. at 8; *see also* Stoops Decl. ¶ 39. To date, no Opt-In Plaintiff has expressed any concern with the settlement or its terms, indicating widespread approval of the settlement by the Plaintiffs. Stoops Decl. ¶ 39. Accordingly, this factor weighs in favor of approval of the

9

settlement.

### f. The Possibility of Fraud or Collusion

When courts in the Ninth Circuit examine the terms of FLSA settlements, courts will often find fraud or collusion if the following conditions are present:

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the plaintiffs negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds . . .; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Jennings*, 2018 WL 4773057, at *8 (alterations omitted) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

In this case, the Court finds no signs of fraud or collusion. The Parties reached the settlement through arm's-length negotiations. Stoops Decl. ¶ 22. Plaintiffs' Counsel will not receive a disproportionate distribution of the settlement fund since only approximately 30% of the settlement will go towards attorney's fees. *See id.* ¶ 39. In addition, the Court does not find any evidence of a clear sailing agreement or any reversion of funds. Therefore, the Court concludes this factor weighs in favor of approval.

\* \* \*

After considering the totality of the circumstances, the Court finds that the proposed settlement is a fair and reasonable resolution of a bona fide dispute.

### 3. Attorney's Fees and Litigation Costs

Attorney's fees and litigation costs may also be awarded as part of an FLSA settlement if they are reasonable. *See Selk*, 159 F. Supp. 3d at 1180–81; *see also* 29 U.S.C. § 216(b). Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine whether the attorney's fees are reasonable. *See In re Bluetooth*, 654 F.3d at 942. When applying a percentage-of-recovery method, courts often use 25% of the fund as the "benchmark" for a reasonable fee award. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). In addition, courts can use the lodestar method to cross-check the percentage of recovery. *See Vizcaino v. Microsoft*

10

*Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (noting that when applying the percentage-of-the-fund approach, the court may use the lodestar as a cross-check on the reasonableness of the fee request).

Plaintiffs' Counsel requests reimbursement of its litigation fees and costs incurred in the amount of $31,894.63, which divides into $19,677.11 for attorney's fees and $12,217.52 in litigation costs. *See* Stoops Decl. ¶ 38. Since Plaintiffs' total settlement is $65,000, the attorney's fees constitute approximately 30% of the settlement fund. Plaintiffs' Counsel has expended over 150 hours litigating this case and has accumulated a lodestar in the amount of $78,120. *Id.* ¶¶ 31, 33; Mot., Ex. C ("Sagafi Decl.") ¶ 20, ECF 69-3. Therefore, their request for attorney's fees represents a negative multiplier of 0.251. Stoops Decl. ¶ 33. Although the percentage of recovery is slightly higher than the standard 25% in the Ninth Circuit, the Court nevertheless approves the attorney's fees request given the negative lodestar. *See, e.g.*, *Alvarez v. Farmers Ins. Exch.*, No. 14-CV-0574-WHO, 2017 WL 2214585, at *5 (N.D. Cal. Jan. 18, 2017) (stating that a fee award that was 53% of lodestar was "objectively reasonable under the lodestar method of calculation").

Furthermore, the litigation costs sought by Plaintiffs' Counsel are reasonable. These costs primarily involve necessary court fees, expert witness fees, and the opt-in notice fees. Stoops Decl. ¶ 38; Sagafi Decl. ¶ 24. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Selk*, 159 F. Supp. 3d at 1181 (citation omitted). The Court finds that the amount requested in costs is reasonable under the circumstances and appropriately documented.

Accordingly, the requested attorney's fees and litigation costs are reasonable.

**B.     Service Awards**

The Settlement Agreement also provides for service awards of $2,000 for each Named Plaintiffs for a total of $6,000. Settlement Agreement § 2.B.3. "[A] district court may award an incentive payment to the named plaintiffs in an FLSA collective action to compensate them for work done on behalf of the class." *Selk*, 159 F. Supp. 3d at 1181. In determining whether a service award is warranted, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (quoting *Staton v.*

11

*Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). In FLSA settlements, courts in this district have generally found service awards of $5,000 to be reasonable. *Jennings*, 2018 WL 4773057, at *9.

Plaintiffs' Counsel explains that Named Plaintiffs worked diligently to assist Plaintiffs' Counsel throughout this litigation. Stoops Decl. ¶ 36. Named Plaintiffs took part in multiple interviews and discussions with Plaintiffs' Counsel while providing Plaintiffs' Counsel with a substantial number of documents, valuable information, and analysis. *Id*. In total, Named Plaintiffs each spent approximately 25 to 35 hours in connection with this litigation. *Id*. The Named Plaintiffs' active participation helped mitigate the risks of the case and contributed to the substantial recovery here. Accordingly, the Court finds that the requested service awards are appropriate and approves them.

### C. Rule 23(e)

"Federal Rule of Civil Procedure 23(e) requires courts to approve the proposed voluntary dismissal of class claims." *Gonzalez*, 2017 WL 1374582, at *4 (internal quotation and modification omitted). This rule applies to pre-certification classes as well. *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989); *see also Lyons v. Bank of Am., NA*, No. 11-CV-1232-CW, 2012 WL 5940846, at *1 n.1 (N.D. Cal. Nov. 27, 2012) ("Courts in this district have expressed some uncertainty about whether Rule 23(e) still applies to pre-certification settlement proposals in the wake of the 2003 amendments to the rule but have generally assumed that it does."). Thus, where parties seek to voluntarily dismiss class claims, the court must inquire into possible prejudice from the following circumstances:

> (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.

*Diaz*, 876 F.2d at 1408.

The Court finds that there is no prejudice to the putative class members here from the dismissal without prejudice of the class claims. First, there is nothing in the record to suggest that putative class members were aware of the class action. While putative class members received notice of the FLSA collective action, the notice did not mention the class action. *See* ECF 22, 23.

1   Moreover, the 22 potential class members had the opportunity to opt in to the FLSA collective but
2   chose not to, indicating a lack of interest in pursuing their potentially meritorious claims.

3   Second, there does not seem to be a lack of adequate time for class members to file their
4   own actions. The FLSA generally has a two-year statute of limitations, which is extended to three
5   years if the violation is "willful." *Gonzalez*, 2017 WL 1374582, at *5; 29 U.S.C. § 255(a).
6   Plaintiffs filed their case in August 2017. ECF 1. The filing of this action likely "suspends the
7   applicable statute of limitations as to all asserted members of the class who would have been
8   parties had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*,
9   414 U.S. 538, 554 (1974). With this tolling, there is a more limited risk of the statute of
10  limitations barring the absent class members' claims. Compl. ¶¶ 24–26; *see also Gonzalez*, 2017
11  WL 1374582, at *5.

12  Third and finally, it does not appear that Plaintiffs sought to settle the case to further their
13  own interests. As discussed above, there is no evidence in the record of fraud or collusion
14  between the Parties in settling the case. And dismissal of the putative members' claims is without
15  prejudice, which allows all potential class members to pursue their claims after this case is
16  terminated. Therefore, the Court DISMISSES the putative class claims without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' unopposed motion for approval of FLSA collective settlement and DISMISSES the class claims without prejudice.

The Court having approved the settlement of Plaintiffs' FLSA claims and otherwise approved the settlement agreement, the Court concurrently enters the parties' stipulated judgment dismissing the action with prejudice. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: July 23, 2019

_____
BETH LABSON FREEMAN
United States District Judge

13